UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **JAMES A. QUARRELS** | * | **DOCKET NO. 07-1023** |
| **VERSUS** | * | **JUDGE JAMES** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAGISTRATE JUDGE HAYES** |

**REPORT AND RECOMMENDATION**

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

**Background & Procedural History**

James A. Quarrels protectively filed the instant application for Disability Insurance Benefits on August 3, 2005. (Tr. 33, 46-48). He alleged disability since June 11, 2005, due to diabetes, high blood pressure, arthritis, and heart problems. (Tr. 46, 63). The claim was denied at the initial stage of the administrative process. (Tr. 33, 35-38). Thereafter, Quarrels requested and received an October 26, 2006, hearing before an Administrative Law Judge ("ALJ"). (Tr. 223-266). In a January 24, 2007, written decision, the ALJ determined that Quarrels was not disabled under the Social Security Act, finding at Step Five of the sequential evaluation process that he was able to make an adjustment to work that exists in substantial numbers in the national

economy. (Tr. 15-24). Quarrels appealed the adverse decision to the Appeals Council. However, on April 23, 2007, the Appeals Council denied Quarrels' request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 5-7).

On June 14, 2007, Quarrels sought review before this court. He alleges the following errors:

(1) the ALJ erred by failing to set forth good cause for rejecting the opinion of plaintiff's treating physician; and

(2) the court should remand the case to consider new and material evidence submitted to the Appeals Council.

### **Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de*

*novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found to be disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

3

>   (4)   If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.
>
>   (5)   If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

Issue 1:

The ALJ found at Step Two of the sequential evaluation process that Quarrels suffered from severe impairments of: type II diabetes mellitus, diabetic retinopathy, arthritis, and hypertension. (Tr. 20). The ALJ concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. *Id*.

The ALJ next determined that Quarrels retained the residual functional capacity to

perform a full range of light work. (Tr. 20).[1] Plaintiff contends that the ALJ failed to set forth good cause for rejecting the opinion of his treating physician, Dr. Nobles.

On August 18, 2006, Jack C. Noble, M.D., completed a disability form on behalf of Quarrels. (Tr. 130-131).[2] On the form, Noble indicated that Quarrels was totally disabled from performing his past occupation. *Id*. It further stated that plaintiff was capable of working 30 hours per week. *Id*. Noble opined that plaintiff could stand for one hour with breaks, sit for five hours with breaks, drive for one hour continuously, and walk for one hour with breaks. *Id*. He was capable of sedentary lifting, i.e. occasionally lifting up to ten pounds. *Id*. Noble indicated that plaintiff could reach above shoulder level bilaterally, and that he had no limitation of cardiac functioning. *Id*.

Clearly, the limitations recognized by Dr. Noble are inconsistent with the ALJ's residual functional capacity assessment, and if credited in their entirety, would undermine the ALJ's Step Five determination.[3] In response to Dr. Noble's assessment, the ALJ remarked that the

---

[1] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[2] The form appears to have been sent by an insurance company. *Id*.

[3] Although, a doctor's opinion that a claimant is "disabled" or "unable to work" is afforded no special significance under the regulations, Dr. Noble's statements are probative

limitations were too restrictive. (Tr. 22). He noted that Quarrels had shown moderate improvement in strength and endurance as a result of physical therapy. *Id*. He then stated that "[e]ven the claimant's treating physician opined that he was capable of working at the sedentary level." *Id*.

> "ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir.1985). The treating physician's opinions, however, are far from conclusive. "[T]he ALJ has the sole responsibility for determining the claimant's disability status." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir.1990).
>
> Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony. The good cause exceptions we have recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. *Scott*, 770 F.2d at 485. In sum, the ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." Id.; see also 20 C.F.R. § 404.1527(c)(2) ("If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all the other evidence and see whether we can decide whether you are disabled based on the evidence we have.").

*Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

The Fifth Circuit has held that

The court observes that the ALJ's expression that Dr. Noble's limitations were too restrictive, is not a reason for discounting the limitations; the statement simply reflects the ALJ's disagreement with Dr. Noble. The ALJ's apparent emphasis upon Dr. Noble's opinion that Quarrels was capable of sedentary work overlooks Noble's statement that plaintiff could only

---

because he imposed specific limitations. *Contrast*, 20 C.F.R. § 404.1527(e)(1); *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003)

work 30 hours per week. (Tr. 130).[4] That leaves the ALJ's comment that Quarrels showed moderate improvement of strength and endurance as a result of physical therapy. Although in November 2005, Quarrels did show significant improvement after 12 physical therapy sessions, he continued to exhibit reduced range of motion particularly in his left hip and reduced strength in his left lower extremity. (*See*, Physical Therapy Discharge Summary; Tr. 186). He also continued to exhibit some tenderness over the left trochanteric bursa with prolonged activities. *Id*. In short, plaintiff's improvement following physical therapy is not inconsistent with the limitations recognized by plaintiff's treating physician some nine months later.

It is apparent that in lieu of Dr. Noble's assessment, the ALJ implicitly credited the findings of an October 11, 2005, consultative examination administered by David Hebert, M.D. (Tr. 114-117).[5] During the examination, Quarrels stated that he experienced chest pain about once or twice per month. *Id*. He acknowledged that he would still be working if the paper mill had not closed down. *Id*. His diabetes seemed to be poorly controlled. *Id*. He complained of generalized arthritis, but had no real extremity weakness or numbness. *Id*. His combined vision

---

[4] A claimant's residual functional capacity contemplates the ability to work on a regular and continuing basis, i.e. 40 hours per week. *See*, SSR 96-8p. A "'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id*. The ability to work 40 hours per week is not always required when evaluating an individual's ability to perform past relevant work at Step Four of the sequential evaluation process. *Id*. Here, however, the Commissioner found Quarrels not disabled at Step Five of the sequential evaluation process. *Id*.

[5] The record also contains a physical residual functional capacity assessment form completed by a disability examiner. (Tr. 120-127, 33). However, the ALJ discounted the opinion that plaintiff was capable of medium work because he believed it to be too broad. (Tr. 22). Moreover, a disability examiner is not a medical doctor, and her opinion is not considered an acceptable medical source statement or afforded the same weight as an opinion of a medical or psychological consultant of the state agency. 20 C.F.R. 404.1527(f) and 416.927(f). The opinion of the disability examiner can only be considered as lay evidence and is afforded little probative value. 20 C.F.R. 404.1513(d)(3) and 416.912(d)(3).

was 20/40 bilaterally. *Id*. Straight leg raising was negative bilaterally. *Id*. His gait and station were normal, without assistive devices. *Id*. He had no difficulty with routine ambulation or heel/toe walking. *Id*. However, he had pitting edema in both ankles. *Id*. There was no swelling, deformity or erythema of any joints. *Id*. All peripheral joints exhibited a full range of motion. *Id*. There were no motor or sensory deficits. *Id*.

Hebert diagnosed non-specific chest pain thought to be muscular in origin; arterial hypertension, adequately controlled, with no clear evidence of end organ damage; type II diabetes, with no clear evidence of end organ damage (other than diabetic retinopathy); diabetic retinopathy with decreased combined vision of 20/40 bilaterally; unexplained peripheral edema of both ankles of uncertain etiology; no evidence of significant cardiovascular or cardio diseases; and no evidence of significant neurological deficits. *Id*. Hebert saw no reason why Quarrels could not perform routine walking, sitting, standing, carrying, and lifting for an eight hour day. *Id*. He emphasized that plaintiff would still be working if the mill were still open. *Id*.

While under certain circumstances, an ALJ may reject the opinion of a treating physician and favor the findings of a consultative examiner, the ALJ's rationale for doing so must be supported by substantial evidence. In this case, the ALJ's reasons for rejecting Dr. Noble's opinion are not well-supported. Moreover, Dr. Hebert's findings seem to have been colored by plaintiff's admission that he would still be working at the paper mill if it had not closed down. However, the ALJ ultimately determined that Quarrels did not retain the residual functional capacity to return to his past relevant work. Indeed, there is evidence that plaintiff's condition deteriorated in the ten months between Dr. Hebert's examination and Dr. Noble's assessment.[6]

In sum, the ALJ's explanation for shunning Dr. Noble's assessment is not supported by

---

[6] *See e.g.*, plaintiff's ongoing treatment for left shoulder and hip pain. (Tr.136-140).

good cause. *See, Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir.2000) (an ALJ cannot reject a medical opinion without an explanation supported by good cause). The continued vitality of Noble's assessment materially undermines the ALJ's residual functional capacity assessment.[7]

Because the foundation for the ALJ's Step Four determination was premised upon a residual functional capacity which is not supported by substantial evidence, the undersigned finds that the ALJ's ultimate conclusion that plaintiff was not disabled, is likewise not supported by substantial evidence.[8] Accordingly,

IT IS RECOMMENDED that the matter be REVERSED and REMANDED for further proceedings consistent herein.[9]

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of

---

[7] This does not mean that upon remand the ALJ is obliged to credit Dr. Noble's findings. Further development may provide valid bases for discounting Dr. Noble's opinion. For example, the ALJ may re-contact Dr. Noble and ask him to explain the rationale for his limitations – particularly Noble's inability to work more than 30 hours per week.

[8] The undersigned also observes that to the extent the ALJ relied upon Medical-Vocational Rule 202.07 to find Quarrels not disabled, he arguably did not solicit requisite evidence from the vocational expert that Quarrels retained work skills which were readily transferrable to a "*significant range* of semi-skilled or skilled work." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 202.00(c) (emphasis added). Here, the record only contains evidence that plaintiff's skills were transferrable to two semi-skilled jobs. *Compare, Lounsburry v. Barnhart*, 468 F.3d 1111 (9th Cir. 2006) (evidence that skills are transferrable to one occupation does not constitute a significant range of work).

[9] The court need not address plaintiff's second assignment of error. The new medical evidence may be considered by the Commissioner upon remand.

filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, on 26th day June, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE